

$400
JCJ

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LARRY CARTER | : | **MAJOR TRIAL JURY** |
|     PLAINTIFF | : | **DEMAND** |
| | | |
| LESLIE DAVIS | : | |
|     PLAINTIFF | : | |
| | : | **18   4404** |
| THE ESTATE  OF | : | **CIVIL ACTION NO.** |
| TIFFANY CAPERS-ALLEN BY | | |
| SHAWN ALLEN, ADMINISTRATOR | | |
|     PLAINTIFF | : | |
| | | |
| SHARON AGBEDE | : | |
|     PLAINTIFF | : | |
| | | |
| TIARA COUNCIL | : | |
|     PLAINTIFF | : | |
| | | |
| CATHERINE MACKEY- GAITHER | | |
|     PLAINTIFF | : | |
| | | |
| GREGORY GARNER | : | |
|     PLAINTIFF | : | |
| | | |
| JENNIFER JUBILEE | : | |
|     PLAINTIFF | : | |
| | | |
| ROCHELLE MORRIS | : | |
|     PLAINTFF | : | |
| | | |
| KIMBERLY RODRIQUEZ | : | |
|     PLAINTIFF | : | |
| | | |
|        v. | : | |
| | | |
| CITY OF PHILADELPHIA | | |
|     DEFENDANT | : | |

## CIVIL COMPLAINT

## INTRODUCTION

This action is brought by individuals who are currently employed and have been employed in the last three years by the City of Philadelphia's Department of Behavioral Health (hereinafter "DBH") in the Division of Mental Health/Disability Services, (hereinafter "MHDS"), in particular the Acute Services Unit (hereinafter "Acute Unit") for purposes of obtaining relief under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §201, *et. seq.* (hereinafter "FLSA") for unpaid overtime compensation, liquidated damages, costs, attorneys' fees, declaratory and/or injunctive relief, and/or any such other relief the Court may deem appropriate.

The Plaintiffs are Mental Health Emergency Service Coordinators 2 (hereinafter "Coordinator(s)") in DBH's Acute Unit. The Coordinators are required to work 8.5-hour shifts at their office location. In addition, the Coordinators work mandatory overtime, known as standby shifts, at night at their homes, and work overtime weekend hours, day and night shifts from their home.

When working from home, there are restrictions on their activities, they must answer the phone within three rings or be subject to discipline. The mandatory evening and weekend work as structured results in many individuals working seven days a week or working without a sufficient rest period. They are not even compensated at the appropriate hourly rate for overtime, which should be 1.5 their hourly rate. It is not uncommon for the Coordinators to work over 1.200 hours a year outside of their office location.

Defendant has willfully violated the FLSA by intentionally failing and refusing to pay the Coordinators all compensation due them under the FLSA and its implementing

regulations over the last three years and this course of conduct continues to the present. Defendant administers an unlawful compensation system that fails to provide appropriate overtime compensation for work in excess of 40 hours, which is mandatory.

## JURISDICTION AND VENUE

1.    This Court has federal question jurisdiction of this matter pursuant to 28 U.S.C. § 1331

for claims brought under the FLSA, a federal statute.

2.  Venue is appropriate as the events in question took place in this jurisdiction and the parties reside in this jurisdiction.

## PARTIES

3.  The Defendant, City of Philadelphia, (hereinafter "Defendant" or "City") is a municipal corporation and a city of the first class, organized and existing under the laws of the Commonwealth of Pennsylvania and is an employer within 29 U.S.C. §203(d), as a political subdivision. The City employs the Coordinators named herein where they work at the Acute Unit of DBH, a public agency within the meaning of 29 U.S.C. §203(x) and is required to pay overtime compensation.

4.  Plaintiff Larry Carter, has been employed for the last three years and continues to be employed by the Defendant as a Coordinator 2, is an adult individual residing at 6236 Limekiln Pike, Philadelphia, Pa, 19141.

5. Plaintiff Leslie Davis, has been employed for the last three years and continues to be employed by the Defendant as a Coordinator 2, is an adult individual residing at 3141 Weikel Street, Philadelphia, Pa 19134.

6.  Plaintiff Estate of Tiffany Capers-Allen, brings this claim by Shawn Allen, her husband,

who is the Administrator of her Estate. The address of the Administrator is 8447 Bayard Street,

Philadelphia, Pa. 19150.  The decedent, Tiffany Capers- Allen, was employed by the Defendant,

until her death on January 18, 2018, as a Coordinator 2.

7. Plaintiff Sharon Agbede, has been employed for the last three years and continues to

be employed by the Defendant as a Coordinator 2, is an adult individual residing at 922

Friendship Street, Philadelphia, Pa. 19111.

8.  Plaintiff Tiara Council, has been employed for the last three years and continues to be

employed by the Defendant as a Coordinator 2,.is an adult individual, residing at 6132 Old York

 Road, Philadelphia, Pa. 19141.   She has recently been promoted from a Coordinator 1 to a

Coordinator 2.

9.  Plaintiff Catherine Mackey-Gaither. has been employed for the last three years and continues

to be employed by the Defendant as a Coordinator 2, is an adult individual residing at 9543

Walley Avenue, Philadelphia, Pa. 19115.

10. Plaintiff Gregory Garner, has been employed for the last three years and continues to be

 employed by the Defendant as a Coordinator 2, is an adult individual residing at 6311 N.

Garnet Street Philadelphia, Pa. 19141.

11.  Plaintiff Jennifer Jubilee, has been employed for the last three years and continues to be

employed by the Defendant as a Coordinator 2, is an adult individual residing at 724 E.

Dorset Street, Philadelphia, Pa. 19119.

12. Plaintiff Rochelle Morris, has been employed for the last three years and continues to be

employed by the Defendant as Coordinator 2, is an adult individual residing at 2119 W.

Ontario Street, Apt.13, Philadelphia, Pa. 19140.

13.  Plaintiff Kimberly Rodriquez, has been employed for the last three years and continues

to be employed by the Defendant as a Coordinator 2, is an adult individual residing at

1825 Afton Street, Philadelphia, Pa. 19111.


## FACTUAL BACKGROUND

### A. General Background

14.  DBH, an agency of the City, has served the residents of Philadelphia by operating a

call center for intervention for voluntary and involuntary commitment and also operates a

suicide hotline on a 24/7 basis. The Acute Unit has two overall major functions (1) a

phone-based suicide and crisis intervention help line and (2) a mental health emergency

line. Coordinators answer both types of calls.

15. During the relevant time period and continuing to the present, the Defendant has been

engaged in interstate commerce by purchasing goods and services in commerce and

engaged in commerce through the delivery of services.

16.  DBM has provided coverage for Philadelphia and the Commonwealth of

Pennsylvania, through a 24-7 crisis hot-line, and since August 2017, this coverage has

been expanded to include service for other states for which the Defendant City has

received grant money.

17. Each Plaintiff has worked within the past three years for the City in their respective capacities, as non-exempt FLSA employees. and have now or had the title of Mental Health Coordinators 1 or 2.

18.    The Acute Unit, with respect to suicide prevention, operates a 24/7 service by manning a call-in service, which includes counseling, guidance on providers, as well as, referrals for additional evaluative and treatment services and  services have been provided as part of the National Suicide Prevention Hotline staring in August of 2017.

19. The Coordinators in the Acute Unit provide a facilitative service to medical and health care professionals, citizens, city workers, the general public, and other third parties on matters pertaining to mental health commitments, referral services, and ensure that regulations are complied with concerning mental health commitments.   In addition, the Coordinators provide community outreach by lecturing groups concerning mental health procedures and suicide prevention.

20. The Coordinators working on involuntary commitments are known as delegates. Callers to this line include a family member, a relative, a friend or other persons who seek help to address emotional or mental health issue, including for substance abuse, for third parties. Also, hospitals or physicians who are seeking information to obtain assistance in facilitating services for individuals make calls to the Coordinators.

21. The Coordinators, who are delegates, work with callers to help assess the situation over the phone and to provide helpful information and/or to facilitate the provision of services in a variety

of ways through direct access to crisis response centers, crisis specialists, and crisis residential services, all of which operate 24/7.  The Coordinators also assess the situation

over the phone to approve or disapprove a request for an involuntary commitment based on the stipulations as set forth in the Mental Health Procedures Act.

22. The Coordinators, fill out necessary paper work for involuntary commitments, dispatch mobile teams or the police to a location where they are needed; do research on at risk individual by searching data bases for prior mental health history; collect and enter data into a computer data base; and fill out forms for the Life Line and National Suicide Prevention Hotline.

23.   Cases that are unique or exceptional are addressed with a supervisor during the day,

on weekends and on standby shifts.

24   Coordinators are not exempt under the FLSA, as no special educational requirements exist and there are no licensing requirements for this position.

25.  After being hired, the Coordinators who come into this position with no professional training, then undergo six months of training on mental health guidelines for commitment and suicide prevention training. They also received training in how to handle the national suicide prevention line.

26. The main difference between a Coordinator 1 and 2, is that the individual in the Coordinator 2 position may provide guidance to a lower level coordinator.

27. The. department is comprised of 14 individuals, who are in the position of Coordinators, and three supervisors who are stationed at 8th and Market.

28.   The Coordinators in the unit are required to work straight time for 8.5 hours a day at their location at 8th and Market. There are two shifts. The morning starts times are staggered to start at half hour intervals beginning at 7:30 A.M. to 9:00 A.M. The second shift starts at 4:00 P.M. or 4:30 to 12:30 A. M. to 1:00 A.M.

29. The Coordinators are required to sign in at the beginning of the shift, sign in and out for lunch, and sign out at the end of the day. If the Coordinator does not follow the sign in or out procedures he or she can be subject to progressive discipline.

30. Coordinators are required to sign out for lunch even if they do not take the allotted hour lunch time. The Coordinators are assigned one-hour lunch times; however, lunch is not always possible because of the nature of the calls that they are handling.

31. A Coordinator is permitted two fifteen-minute breaks a day, however, if they go to the restroom or leave the area at any other time they must tell the Acute Unit Supervisor when they are leaving and when they will return.

32. A Coordinator does not always leave their shift at the scheduled end time or at the same time each day when working from home or the office. A Coordinator cannot end their shift until they are relieved or a call is finished, however, the reporting time is not changed for the Coordinator's next shift.

33. A Coordinator who works a night standby shift (Sunday through Thursday) that ends at 7:30 A.M. is still required to be at the office for the start of their day shift which can start anytime between 7:30 and 9:00, due to staggered start times for the first shift. If an employee arrives 14 minutes late for the beginning of the shift they are docked pay. Alternatively, they can take vacation time or they must make the time up at the end of their work location shift.

34. Depending on when the Coordinator's night shift ends and their mandatory arrival time for the next morning, a Coordinator may have to come in earlier or stay as much as one hour to make up the time. Even if the Coordinator has a night standby assignment, they must make up the time on the same day to avoid being disciplined or having to use vacation time.

35. The Coordinators also go out to the community to make presentations to heighten the community's awareness as to the services that are available and to raise recognition as to the

signs of a suicidal individual or an individual who needs crisis intervention. This is beyond the normal office hours and for this they are paid time and a half.

**B. 24/7 Operation**

36. The City has organized the Acute Unit to operate 24/7. When hired, the applicants for the

Coordinator positions were told that overtime was mandatory.

37. When they were hired, the Coordinators, with the exception of Larry Carter and Leslie Davis, were required to sign an overtime contract, however, those who signed the contract were not allowed to have a copy.

38. Overtime takes several forms (1) volunteer outreach for which an employee is paid at time and a half, (2) the hours between 12:30 A.M. and 7:30 A.M. which are called standby time. and (3) week-end shift work, (Saturday, Sunday and holidays) comprised of three shifts, which are 8:30 A.M. to 4:30 P.M., 4:30 P.M to 12:30 A.M. and 12:30 A.M. to 8:30 A.M.

39. When working evenings or weekends, an employee must contact the person they are reliving at least fifteen minutes before their shift begins. There are times a worker must stay on beyond the end of their shift to complete a call or because thy are unable to reach their relief.

40. Assignments for standby time and week-end coverage are made on a rotating basis based on an alphabetical listing of the employees. The Coordinators who wish to change

are required to find coverage for their mandatory overtime shift  work from home and this includes coverage during vacation time.

41.  In addition, there may also be instances in which the Coordinators are required to work additional over-time for special events such as the Papal visit or work from home when other City personnel have the day off due to weather or other extreme conditions.

42.  On weather days, when the rest of the City is closed and other City employees cannot work, the Coordinators are required to work their normal 8.5hour day or night shift at home. If they are unable to work from home they must provide a doctor's note or they can be docked pay or be disciplined.

43.    After working a shift at the office, a Coordinator may have to work all night, report to the office the next day and they can be subject to discipline if they are late.  If they arrive 14 minutes late they are required to make the time up the same day or they must take vacation time to avoid leaving the office late for their next work assignment, as sometimes happens when there is a standby shift for which they must be on time.

44.  It is not uncommon for an employee to work during the day, have standby night work during the week and also work both Saturday and Sunday.

45.    This work cycle results in many Coordinators going several days without time off and working two or more weekends a month.

46.  During the day, the Coordinators deal with voluntary and involuntary commitments and  now also answer a crisis hot-line for suicide prevention.  Initially, the Coordinators were assigned to either the Delegate Line or the Suicide Line, however that changed for both work in the office and at home.

47.  At night and on weekends, prior to August 2017, the Coordinators duties were previously limited to handling one line for voluntary and involuntary commitments or the suicide line and now they are directed to answer both types of calls at night.

48. Commencing in August 2017, the Coordinators took on additional duties and now can have a call come in on one of three lines which are voluntary and involuntary commitments, the local suicide prevention line, called the Lifeline, and they are now also required to answer the National Suicide prevention line, which is a suicide prevention line from other states.  This has increased their workload.

49.  While working at home, the Coordinators are expected to log in calls and keep materials at hand that they would have in the office including laws, regulations, guidelines, and anything unusual should be directed to a supervisor. They are required to have a quiet and professional atmosphere at home.

50. The Coordinators, when working from home are required to answer the phone call within three rings, or less than six seconds, or they can be disciplined.  This discipline includes losing future income from working at home.

51.  If a sudden emergency arises when there is a home assignment and coverage cannot be obtained, the Coordinator may be required to take vacation time or sick time and if a doctor's note is not provided they can be subject to discipline.

52.  The City, prior to August 2017, provided to the Coordinator's a landline and a rotary dial phone which was paid for by the City. Commencing in August 2017, the Plaintiffs were required to pay for their own equipment including obtaining internet service if none was in the household, as well as incurring  extra charges for data and related increased electrical expenses.

53.  The Coordinators are required to have an internet connection via a modem and many of the Coordinators wear a headset with a cord attached to the computer nearby for access at night and weekends to be close to the modem.

54. Some of the Coordinators sleep in a chair near the computer so that they do not disturb

their spouses or children and so they can answer the phone in the requisite three rings.

55.  The number of phone calls have increased substantially in the last three years, in first three months of 2018, the Coordinators handled roughly 14,000 calls.

56. When working outside of the office, the Coordinators take a phone line to start their shift.  In the morning, the phone line for a standby shift is released back to the office location. A timesheet must be turned in the next business day.

**C. Record Keeping**

57.  The time sheets must be turned in the next business day to the standby supervisor, however, pursuant to office rules it is the Coordinator who is responsible for keeping their time.

58. The standby supervisor than provides the Coordinator's time to the DBH personnel. These individuals in turn provide this to the City's central payroll department so that a check is cut from a central payroll location.

59.  The paychecks do not reflect the overtime worked in the pay period, as frequently the overtime includes only Thursday and not Friday, Saturday or Sunday of a pay period. At times, the pay check may be off by more than 20 hours.

60.  The Coordinators have attempted to clarify the overtime due and are not provided any assistance by their timekeeper or the central payroll department. The amount paid in

the check does not even provide an indication as to what dates the overtime pay

corresponds to making it impossible to reconcile by yourself.

61.  The manner in which payment is made violates 29 C.F.R.§ 778.106 and precedent in this

Circuit which requires payment to be made in the pay period unless it is not feasible.

**D. Overtime Pay**

62.  Plaintiffs frequently work seven days a week but are not compensated at time and a half based on their salary and instead are paid a flat $21.14 an hour.

63.  On an average the Coordinators work 1,200 overtime hours a year, which includes the mandatory standby overtime and weekend shifts.

64.  The City, the DBH and the Acute Unit are aware of the practice of not paying the proper

rate of overtime to the Coordinators as each level receives the total number of overtime worked.

65. The Coordinators are ultimately paid by the Defendant's payroll department and are issued a check by the Defendant City.

66.  Pursuant to FLSA 29 U.S.C. § 207(a)(1), Defendant violates FLSA overtime requirements by failing to provide compensation to the Coordinators for work in excess of 40 hours a week during the pay periods that overtime is worked and should be compensated at time and a half.

67.  Defendant has knowledge that the Coordinators performed work that required payment of wages and overtime compensation and continues to disregard the law.  This continues to deprive these employees of the requisite compensation due by illegally paying them at a rate of less than one and half times their salary.

68. The City and DBH record the overtime worked and pay for said over-time at rate that is less than time and a half and the check issued even fails to compensate the Coordinator in the pay period that they earned overtime.

69. Defendant's conduct, as set forth in this complaint, was willful and in bad faith, and has caused significant damages to each of the Coordinators identified in this Complaint.

## COUNT ONE
## LARRY CARTER
### FAIR LABOR STANDARDS ACT VIOLATION

70. Plaintiff Larry Carter is a party to whom wages are owed as the overtime provisions of the FLSA have been violated, and he incorporates by reference as though fully set forth herein

Paragraphs  1 to 69.

71. It is mandatory for Larry Carter to work overtime, however, all time is not compensated

for at time and a half, and many hours worked are not compensated at all in the appropriate pay

period.

72. On the average, Larry Carter works 24 hours of overtime in a week. The standby time

and weekend work which averages 24 hours a week is compensated at $21.14 which does not

even equal his hourly rate.

73. The overtime for which the Larry Carter has worked and has not been properly compensated

 also includes holidays, special events and snow emergencies.

74. Larry Carter estimates that he works 1,200 hours a year for which he is not properly

compensated for overtime.

75. Defendant has repeatedly failed to comply with the overtime provisions of 29 U. S. C.

§ 5207 of the FLSA by failing to pay him time and one-half of his regular rate for hours worked in excess of forty (40) hours per week; and moreover, Defendant has not paid these amounts in a timely manner.

76. Defendant's acts were willful, as Defendant knew, or should have known of FLSA's requirements.

77. Plaintiff Larry Carter is entitled to damages incurred within the three years preceding the filing of the Complaint and continuing to the present, because Defendant acted willfully and knew or should have known or displayed reckless disregard as to whether its conduct was prohibited by the FLSA.

78. Defendant has not acted in good faith or with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Larry Carter   is   entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay as permitted by 29 U.S.C. § 216(b).

79. Alternatively, should the Court find Defendant did not act willfully in failing to pay overtime pay, Plaintiff is entitled to an award of prejudgment interest at the applicable legal rate, as well as declaratory judgment finding the practice illegal for future pay periods and require the Defendant to pay overtime in the pay period it is accrued and to provide sufficient information on the pay check to indicate the hours that are being paid .

80. As a result of the aforesaid willful violations of the FLSA's overtime pay provisions, overtime compensation has been unlawfully withheld by Defendant from Plaintiff.

Accordingly, Defendant is liable under 29 U.S.C. § 216(b), together with an additional

amount as liquidated damages, pre-judgment and post-judgment interest, other monetary

damages, reasonable attorneys' fees and expenses, and costs of this action.

Wherefore, Plaintiff Larry Carter demands judgment in his favor.

## COUNT TWO

### LESLIE DAVIS

### FAIR LABOR STANDARDS ACT VIOLATION

81   Plaintiff Leslie Davis is a party to whom wages are owed as the overtime provisions

of the FLSA have been violated, and she incorporates by reference as though fully set forth herein

Paragraphs 1 to 69.

82. It is mandatory for Leslie Davis to work overtime, however, all time is not compensated

for at time and a half, and many hours worked are not compensated at all in the appropriate pay

period.

83.  On the average, Leslie Davis works 24 hours of overtime in a week. The standby time

and weekend work which averages 24 hours a week is compensated at $21.14 which does not

even equal her hourly rate.

84. The overtime for which the Leslie Davis has worked and has not been properly compensated

also includes holidays, special events and snow emergencies.

85.  Leslie Davis estimates that she works 1,200 hours a year for which she is not properly

compensated for overtime.

86. Defendant has repeatedly failed to comply with the overtime provisions of 29 U. S. C

§ 5207 of the FLSA by failing to pay her time and one-half of her regular rate for hours worked in excess of forty (40) hours per week; and moreover, Defendant has not paid these amounts in a timely manner.

87. Defendant's acts were willful, as Defendant knew, or should have known of FLSA's requirements.

88. Plaintiff Leslie Davis is entitled to damages incurred within the three years preceding the filing of the Complaint and continuing to the present, because Defendant acted willfully and knew, or should have known or displayed reckless disregard as to whether its conduct was prohibited by the FLSA.

89. Defendant has not acted in good faith or with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Leslie Davis is entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay as permitted by 29 U.S.C. § 216(b).

90. Alternatively, should the Court find Defendant did not act willfully in failing to pay overtime pay, Plaintiff is entitled to an award of prejudgment interest at the applicable legal rate, as well as declaratory judgment finding the practice illegal for future pay periods and require the Defendant to pay overtime in the pay period it is accrued and to provide sufficient information on the pay check to indicate the hours that are being paid.

91. As a result of the aforesaid willful violations of the FLSA's overtime pay provisions, overtime compensation has been unlawfully withheld by Defendant from Plaintiff. Accordingly, Defendant is liable under 29 U.S.C. § 216(b), together with an

additional amount as liquidated damages, pre-judgment and post-judgment interest, other

monetary damages, reasonable attorneys' fees and expenses, and costs of this action.

Wherefore, Plaintiff Leslie Davis demands judgment in her favor.

**COUNT THREE**

**ESTATE OF TIFFANY CAPERS-ALLEN, BY HER ADMINISTRATOR SHAWN ALLEN**

**FAIR LABOR STANDARDS ACT VIOLATION**

92.     Plaintiff Estate of Tiffany Capers-Allen. Deceased, brings this claim by the Administrator

of her Estate, Shawn Allen. The decedent's estate is a party to whom wages are owed as the

overtime provisions of the FLSA have been violated, and the Plaintiff incorporates by reference

as though fully set forth herein Paragraphs 1 to 69.

93.   It was mandatory for the Decedent to work overtime, however, all time she worked was

not compensated for at time and a half, and many hours worked were not compensated at all in

the appropriate pay period.

94. On the average, the Decedent worked 24 hours of overtime in a week. The standby time and

weekend work which averaged 24 hours a week was compensated at $21.14 which did not even

equal her hourly rate.

95. The overtime for which the Decedent had worked and had not been properly compensated

also included holidays, special events and snow emergencies.

96.  It is estimated that the Plaintiff worked 1,200 hours a year for which she was not properly

compensated for overtime.

97.  Defendant has repeatedly failed to comply with the overtime provisions of 29 U. S. C.

§5207 of the FLSA by failing to pay the Plaintiff time and one-half of her regular rate for hours worked in excess of forty (40) hours per week; and moreover, Defendant has not paid these amounts in a timely manner.

98.  Defendant's acts were willful, as Defendant knew, or should have known of FLSA's requirements.

99.  The Plaintiff Decedent's estate is entitled to damages incurred within the three years preceding the filing of the Complaint, because Defendant acted willfully and knew, or should have known, or displayed reckless disregard as to whether its conduct was prohibited by the FLSA

100.  Defendant has not acted in good faith or with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Decedent's estate is   entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay as permitted by 29 U.S.C. § 216(b).

101.   Alternatively, should the Court find Defendant did not act willfully in failing to pay overtime pay, the Decedent's estate is entitled to an award of prejudgment interest at the applicable legal rate.

102.   As a result of the aforesaid willful violations of the FLSA's overtime pay provisions, overtime compensation has been unlawfully withheld by Defendant from the

decedent.  Accordingly, Defendant is liable under 29 U.S.C. § 216(b), together with an

additional amount as liquidated damages, pre-judgment and post-judgment interest,

reasonable attorneys' fees and expenses, and costs of this action.

Wherefore, Plaintiff Estate of Tiffany Capers-Allen brought by her Administrator

Shawn Allen demands judgment in her favor.

## COUNT

**FOUR**

### SHARON

AGBEDE

### FAIR LABOR STANDARDS ACT VIOLATION

103.    Plaintiff Sharon Agbede is a party to whom wages are owed as the overtime
provisions of

the FLSA have been violated, and she incorporates by reference as though fully set forth
herein

Paragraphs 1 to 69.

104. It is mandatory for Sharon Agbede to work overtime, however, all time is not
compensated

for at time and a half, and many hours worked are not compensated at all in the
appropriate pay

 period.

105.  On the average, Sharon Agbede works 24 hours of overtime in a week.  The
standby time

and weekend work which averages 24 hours a week is compensated at $21.14 which
does not

even equal her hourly rate.

106. The overtime for which Sharon Agbede has worked and has not been properly
compensated

 also includes holidays, special events and snow emergencies.

107. Sharon Agbede estimates that she works 1,200 hours a year for which she is not properly

compensated for overtime.

108. Defendant has repeatedly failed to comply with the overtime provisions of 29 U. S.C.§ 5207 of the FLSA by failing to pay her time and one-half of her regular rate for hours worked in excess of forty (40) hours per week; and moreover, Defendant has not paid these amounts in a timely manner.

109. Defendant's acts were willful, as Defendant knew, or should have known of FLSA's requirements.

110. Plaintiff   Sharon Agbede is entitled to damages incurred within the three years preceding the filing of the Complaint and continuing to the present, because Defendant acted willfully and knew, or should have known or displayed reckless disregard as to whether its conduct was prohibited by the FLSA.

111. Defendant has not acted in good faith or with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Sharon Agbede is   entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay as permitted by 29 U.S.C. § 216(b).

112. Alternatively, should the Court find Defendant did not act willfully in failing to pay overtime pay, Plaintiff is entitled to an award of prejudgment interest at the applicable legal rate, as well as declaratory judgment finding the practice illegal for future pay periods and require the Defendant to pay overtime in the pay period it is accrued and to provide sufficient information on the pay check to indicate the hours that are being paid

113.    As a result of the aforesaid willful violations of the FLSA's overtime pay provisions, overtime compensation has been unlawfully withheld by Defendant from

Plaintiff.  Accordingly, Defendant is liable under 29 U.S.C. § 216(b), together with an

additional amount as liquidated damages, pre-judgment and post-judgment interest, other

monetary damages, reasonable attorneys' fees and expenses, and costs of this action.

Wherefore, Plaintiff Sharon Agbede demands judgment in her favor.

**COUNT**
**FIVE**
                                    **TIARA**
**COUNCIL**
                    **FAIR LABOR STANDARDS ACT VIOLATION**

114.   Plaintiff Tiara Council is a party to whom wages are owed as the overtime
provisions of

the FLSA have been violated, and she incorporates by reference as though fully set forth
herein

Paragraphs 1 to 69.

115.  It is mandatory for Tiara Council to work overtime, however, all time is not
compensated

for at time and a half, and many hours worked are not compensated at all in the
appropriate pay

period.

116. On the average, Tiara Council works 24 hours of overtime in a week.  The standby
time and

weekend work which averages 24 hours a week is compensated at $21.14 which does not
even

equal her hourly rate.

117.  The overtime for which Tiara Council   has worked and has not been properly
compensated

 also includes holidays, special events and snow emergencies.

118. Tiara Council estimates that she works 1,200 hours a year for which she is not
properly

compensated for overtime.

119. Defendant has repeatedly failed to comply with the overtime provisions of 29 U. S. C. § 5207 of the FLSA by failing to pay Plaintiff time and one-half of her regular rate for hours worked in excess of forty (40) hours per week; and moreover, Defendant has not paid these amounts in a timely manner.

120. Defendant's acts were willful, as Defendant knew, or should have known of FLSA's requirements.

121. Plaintiff Tiara Council is entitled to damages incurred within the three years preceding the filing of the Complaint and continuing to the present, because Defendant acted willfully and knew, or should have known or displayed reckless disregard as to whether its conduct was prohibited by the FLSA.

122. Defendant has not acted in good faith or with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Tiara Council is entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay as permitted by 29 U.S.C. § 216(b).

123. Alternatively, should the Court find Defendant did not act willfully in failing to pay overtime pay, Plaintiff is entitled to an award of prejudgment interest at the applicable legal rate, as well as declaratory judgment finding the practice illegal for future pay periods and require the Defendant to pay overtime in the pay period it is accrued and to provide sufficient information on the pay check to indicate the hours that are being paid.

124. As a result of the aforesaid willful violations of the FLSA's overtime pay provisions, overtime compensation has been unlawfully withheld by Defendant from

Plaintiff    Accordingly, Defendant is liable under 29 U.S.C. § 216(b), together with an

additional amount as liquidated damages, pre-judgment and post-judgment interest,

reasonable attorneys' fees and expenses, and costs of this action.

Wherefore, Plaintiff Tiara Council demands judgment in her favor.

## COUNT SIX
### CATHERINE MACKEY-

GAITHER

### FAIR LABOR STANDARDS ACT VIOLATION

125.    Plaintiff Catherine Mackey-Gaither is a party to whom wages are owed as the overtime

provisions of the FLSA have been violated, and she incorporates by reference as though fully set

forth herein Paragraphs   1 to 69.

126.  It is mandatory for the Catherine Mackey-Gaither to work overtime, however, all time is

not compensated for at time and a half, and many hours worked are not compensated at all in

the appropriate pay period.

127. On the average, Catherine Mackey-Gaither works 24 hours of overtime in a week. The

standby time and weekend work which averages 24 hours a week is compensated at $21.14 which

does not even equal her hourly rate.

128. The overtime for which Catherine Mackey-Gaither has worked and has not been properly

compensated also includes holidays, special events and snow emergencies.

129. Catherine Mackey-Gaither estimates that she works 1,200 hours a year for which she is not

properly compensated.

130. Defendant has repeatedly failed to comply with the overtime provisions of 29 U. S. C. §5207 of the FLSA by failing to pay Plaintiff time and one-half of her regular rate for hours worked in excess of forty (40) hours per week; and moreover, Defendant has not paid these amounts in a timely manner.

131. Defendant's acts were willful, as Defendant knew, or should have known of FLSA's requirements.

132. Plaintiff Catherine Mackey-Gaither is entitled to damages incurred within the three years preceding the filing of the Complaint and continuing to the present, because Defendant acted willfully and knew, or should have known or displayed reckless disregard as to whether its conduct was prohibited by the FLSA.

133. Defendant has not acted in good faith or with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Catherine Mackey-Gaither   is   entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay as permitted by 29 U.S.C. § 216(b).

134. Alternatively, should the Court find Defendant did not act willfully in failing to pay overtime pay, Plaintiff is entitled to an award of prejudgment interest at the applicable legal rate, as well as declaratory judgment finding the practice illegal for future pay periods and require the Defendant to pay overtime in the pay period it is accrued and  to provide sufficient information on the pay check to indicate the hours that are being paid.

135.    As a result of the aforesaid willful violations of the FLSA's overtime pay provisions, overtime compensation has been unlawfully withheld by Defendant from Plaintiff   Accordingly, Defendant is liable under 29 U.S.C. § 216(b), together with an

additional amount as liquidated damages, pre-judgment and post-judgment interest,

reasonable attorneys' fees and expenses, and costs of this action.

Wherefore, Plaintiff Catherine Mackey-Gather demands judgment in her favor.

## COUNT SEVEN
## GREGORY GARNER
## FAIR LABOR STANDARDS ACT VIOLATION

136.    Plaintiff Gregory Garner is a party to whom wages are owed as the overtime provisions

of the FLSA have been violated, and he incorporates by reference as though fully set forth herein

Paragraphs 1 to 69.

137. It is mandatory for Gregory Garner to work overtime, however, all time is not compensated

for at time and a half, and many hours worked are not compensated at all in the appropriate pay

period.

138.    On the average, Gregory Garner works 24 hours of overtime in a week. The standby time

and weekend work which averages 24 hours a week is compensated at $21.14 which does not

even equal his hourly rate.

139. The overtime for which Gregory Garner has worked and has not been properly compensated

also includes holidays, special events and snow emergencies.

140.  Gregory Garner estimates that he works 1,200 hours a year for which he is not properly

compensated for overtime.

141. Defendant has repeatedly failed to comply with the overtime provisions of 29 U.S.C. § 5207 of the FLSA by failing to pay him time and one-half of his regular rate for hours worked in excess of forty (40) hours per week; and moreover, Defendant has not paid these amounts in a timely manner.

142. Defendant's acts were willful, as Defendant knew, or should have known of FLSA's

requirements.

143. Plaintiff Gregory Garner is entitled to damages incurred within the three years preceding the filing of the Complaint and continuing to the present, because Defendant acted willfully and knew, or should have known or displayed reckless disregard as to whether its conduct was prohibited by the FLSA.

144. Defendant has not acted in good faith or with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Gregory Garner is  entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay as permitted by 29 U.S.C. § 216(b).

145. Alternatively, should the Court find Defendant did not act willfully in failing to pay overtime pay, Plaintiff is entitled to an award of prejudgment interest at the applicable legal rate, as well as declaratory judgment finding the practice illegal for future pay periods and require the Defendant to pay overtime in the pay period it is accrued and to provide sufficient information on the pay check to indicate the hours that are being paid .

146. As a result of the aforesaid willful violations of the FLSA's overtime pay provisions, overtime compensation has been unlawfully withheld by Defendant from Plaintiff.  Accordingly, Defendant is liable under 29 U.S.C. § 216(b), together with an

additional amount as liquidated damages, pre-judgment and post-judgment interest, other

monetary damages, reasonable attorneys' fees and expenses, and costs of this action.

Wherefore, Plaintiff Gregory Garner demands judgment in his favor.

## COUNT
**EIGHT**
### JENNIFER
JUBILEE
### FAIR LABOR STANDARDS ACT VIOLATION

147.   Plaintiff Jennifer Jubilee   is a party to whom wages are owed as the overtime provisions

of the FLSA have been violated, and she incorporates by reference as though fully set forth herein

Paragraphs 1 to 69.

148.   It is mandatory for Jennifer Jubilee to work overtime, however, all time is not compensated

for at time and a half, and many hours worked are not compensated at the overtime rate at all in

the appropriate pay period.

149. On the average, Jennifer Jubilee works 24 hours of overtime in a week.   The standby time

and weekend work which averages 24 hours a week is compensated at $21.14 which does not even

equal her hourly rate.

150. The overtime for which Jennifer Jubilee   has worked and has not been properly compensated

also includes holidays, special events and snow emergencies.

151. Jennifer Jubilee   estimates that she works 1,200 hours a year for which she is not properly

compensated.

152. Defendant has repeatedly failed to comply with the overtime provisions of 29 U. S. C. §5207 of the FLSA by failing to pay Plaintiff time and one-half of her regular rate for hours worked in excess of forty (40) hours per week; and moreover, Defendant has not paid these amounts in a timely manner.

153. Defendant's acts were willful, as Defendant knew, or should have known of FLSA's Requirements.

154. Plaintiff Jennifer Jubilee is entitled to damages incurred within the three years preceding the filing of the Complaint and continuing to the present, because Defendant acted willfully and knew, or should have known or displayed   reckless disregard as to whether its conduct was prohibited by the FLSA.

155. Defendant has not acted in good faith or with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Jennifer Jubilee  is  entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay as permitted by 29 U.S.C. § 216(b).

156. Alternatively, should the Court find Defendant did not act willfully in failing to pay overtime pay, Plaintiff is entitled to an award of prejudgment interest at the applicable legal rate, as well as declaratory judgment finding the practice illegal for future pay periods and require the Defendant to pay overtime in the pay period it is accrued and to provide sufficient information on the pay check to indicate the hours that are being paid.

157.  As a result of the aforesaid willful violations of the FLSA's overtime pay provisions, overtime compensation has been unlawfully withheld by Defendant from Plaintiff  Accordingly, Defendant is liable under 29 U.S.C. § 216(b), together with an

additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and expenses, and costs of this action.

Wherefore, Plaintiff Jennifer Jubilee demands judgment in her favor.

## COUNT NINE

### ROCHELLE MORRIS

### FAIR LABOR STANDARDS ACT VIOLATION

158. Plaintiff Rochelle Morris is a party to whom wages are owed as the overtime provisions

of the FLSA have been violated, and she incorporates by reference as though fully set forth

herein Paragraphs 1 to 69.

159. It is mandatory for Rochelle Morris to work overtime, however, all time is not compensated

for at time and a half, and many hours worked are not compensated at the overtime rate at all

in the appropriate pay period.

160. On the average, Rochelle Morris works 24 hours of overtime in a week. The standby time

and weekend work which averages 24 hours a week is compensated at $21.14 which does not

even equal her hourly rate.

161. The overtime for which Rochelle Morris has worked and has not been properly compensated

also includes holidays, special events and snow emergencies.

162. Rochelle Morris estimates that she works 1,200 hours a year for which she is not properly

compensated.

163. Defendant has repeatedly failed to comply with the overtime provisions of 29 U. S. C.

§5207 of the FLSA by failing to pay Plaintiff time and one-half of her regular rate for hours worked in excess of forty (40) hours per week; and moreover, Defendant has not paid these amounts in a timely manner.

164. Defendant's acts were willful, as Defendant knew, or should have known of FLSA's requirements.

165. Plaintiff Rochelle Morris is entitled to damages incurred within the three years preceding the filing of the Complaint and continuing to the present, because Defendant acted willfully and knew,

or should have known or displayed reckless disregard as to whether its conduct was prohibited by the FLSA.

166. Defendant has not acted in good faith or with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Rochelle Morris is   entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay as permitted by 29 U.S.C. § 216(b).

167. Alternatively, should the Court find Defendant did not act willfully in failing to pay overtime pay, Plaintiff is entitled to an award of prejudgment interest at the applicable legal rate, as well as declaratory judgment finding the practice illegal for future pay periods and require the Defendant to pay overtime in the pay period it is accrued and  to provide sufficient information on the pay check to indicate the hours that are being paid.

168.   As a result of the aforesaid willful violations of the FLSA's overtime pay provisions, overtime compensation has been unlawfully withheld by Defendant from

Plaintiff.   Accordingly, Defendant is liable under 29 U.S.C. § 216(b), together with an

additional amount as liquidated damages, pre-judgment and post-judgment interest,

reasonable attorneys' fees and expenses, and costs of this action.

Wherefore, Plaintiff Rochelle Morris demands judgment in her favor.

## COUNT
**TEN**

### KIMBERLY
RODRIQUEZ

#### FAIR LABOR STANDARDS ACT VIOLATION

169.  Plaintiff Kimberly Rodriquez is a party to whom wages are owed as the overtime provisions

of the FLSA have been violated, and she incorporates by reference as though fully set forth herein

Paragraphs 1 to 69.

170.  It is mandatory for Kimberly Rodriquez to work overtime, however, all time is not

 compensated for at time and a half, and many hours worked are not compensated at the overtime

rate at all in the appropriate pay period.

171. On the average, Kimberly Rodriquez works 24 hours of overtime in a week.  The standby

time and weekend work which averages 24 hours a week is compensated at $21.14 which does

 not even equal her hourly rate.

172. The overtime for which Kimberly Rodriquez has worked and has not been properly

compensated also includes holidays, special events and snow emergencies.

173.. Kimberly Rodriquez estimates that she works 1,200 hours a year for which she is not

properly compensated.

174. Defendant has repeatedly failed to comply with the overtime provisions of 29 U. S. C.

§ 5207 of the FLSA by failing to pay Plaintiff time and one-half of her regular rate for hours worked in excess of forty (40) hours per week; and moreover, Defendant has not paid these amounts in a timely manner.

175. Defendant's acts were willful, as Defendant knew, or should have known of FLSA's requirements.

176. Plaintiff Kimberly Rodriquez is entitled to damages incurred within the three years preceding the filing of the Complaint and continuing to the present, because Defendant acted willfully and knew, or should have known or displayed reckless disregard as to whether its conduct was prohibited by the FLSA.

177. Defendant has not acted in good faith or with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Kimberly Rodriquez is entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay as permitted by 29 U.S.C. § 216(b).

178. Alternatively, should the Court find Defendant did not act willfully in failing to pay overtime pay, Plaintiff is entitled to an award of prejudgment interest at the applicable legal rate, as well as declaratory judgment finding the practice illegal for future pay periods and require the Defendant to pay overtime in the pay period it is accrued and to provide sufficient information on the pay check to indicate the hours that are being paid.

179. As a result of the aforesaid willful violations of the FLSA's overtime pay provisions, overtime compensation has been unlawfully withheld by Defendant from Plaintiff   Accordingly, Defendant is liable under 29 U.S.C. § 216(b), together with an

additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and expenses, and costs of this action.

Wherefore, Plaintiff Kimberly Rodriquez demands judgment in her favor.

RESPECTFULLY

SUMBITTED,

HOWARD K. TRUBMAN, ESQ

The Employment Law Firm of

Suite 1209

Philadelphia Pa.

Phone 215 2065306

htrubman@gmail.com..

JS44 (Rev 06/17)    JCJ    **CIVIL COVER SHEET**    18-cv-4404

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Larry Carter, Leslie Davis et al

**DEFENDANTS**
City of Philadelphia
1515 Arch Street
Phila., PA 19102

**(b)** County of Residence of First Listed Plaintiff      Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant      Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Howard K. Trubman, Esq. Employment Law Firm of Pennsylvania
1500 Market St., East Tower, Phila., PA 19102
215-206-5306

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1   U.S. Government Plaintiff | ☒ 3   Federal Question *(U.S. Government Not a Party)* |
| ☐ 2   U.S. Government Defendant | ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | | ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☒ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - Medical Malpractice | Product Liability | ☒ 751 Family and Medical Leave Act | | ☐ 893 Environmental Matters |
| | | | | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | | ☐ 550 Civil Rights | Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District *(specify)*   ☐ 6 Multidistrict Litigation - Transfer   ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*
29 U.S.C. sect. 201 et seq
Brief description of cause:
Non-payment of overtime to employees

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
2,000,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*
JUDGE _____   DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 10/08/2018 | /s/ Howard K. Trubman, Esq. |

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG JUDGE _____

OCT 12 2018

JCJ

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 623C Linekin Pike Phila Pa 19141 (Carter) 3141 Weikel St Phila Pa (Davis)

Address of Defendant: 1515 Arch St Phila Pa

Place of Accident, Incident or Transaction: Phila Pa

**18    4404**

---

**RELATED CASE, IF ANY:**

Case Number: _____    Judge: _____    Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1    Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐    No ☒

2    Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☐    No ☒

3    Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐    No ☒

4.    Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐    No ☒

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE 10/2/18    Howard K Trubman    MD/ooz    24696
                *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I D # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

A.    *Federal Question Cases:*

☐ 1    Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2.   FELA
☐ 3.   Jones Act-Personal Injury
☐ 4    Antitrust
☐ 5.   Patent
☐ 6    Labor-Management Relations
☐ 7.   Civil Rights
☐ 8.   Habeas Corpus
☐ 9    Securities Act(s) Cases
☐ 10   Social Security Review Cases
☒ 11   All other Federal Question Cases
       *(Please specify)* Fair Labor Standards Act

B.    *Diversity Jurisdiction Cases:*

☐ 1.   Insurance Contract and Other Contracts
☐ 2.   Airplane Personal Injury
☐ 3    Assault, Defamation
☐ 4    Marine Personal Injury
☐ 5.   Motor Vehicle Personal Injury
☐ 6    Other Personal Injury *(Please specify)* _____
☐ 7.   Products Liability
☐ 8.   Products Liability – Asbestos
☐ 9    All other Diversity Cases
       *(Please specify)* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration )*

I, Howard K Trubman , counsel of record *or* pro se plaintiff, do hereby certify

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000 00 exclusive of interest and costs.

☑ Relief other than monetary damages is sought    Howard Trubman MD/wayk

DATE 10/8/2018    Howard K Trubman    24696
                *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I D # (if applicable)*

NOTE   A trial de novo will be a trial by jury only if there has been compliance with F R C P 38

Civ 609 (5/2018)

OCT 12 2018



**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

<u>CASE MANAGEMENT TRACK DESIGNATION FORM</u>

| Larry Carter, Leslie Davis et al | : | CIVIL ACTION |
|---|---|---|
| v. | : | **18** 4404 |
| City of Philadelphia | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus · Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. (✓)

| 10/8/2018 | Howard K. Trubman, | Larry Carter, Leslie Davis et al |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-206-530 | | htrubman@gmail.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

OCT 12 2018,

(Civ. 660) 10/02